UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BRADFORD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PROFESSIONAL TECHNICAL SECURITY SERVICES INC (PROTECH), et al.,<br><br>　　　　Defendants. | Case No. 20-cv-02242-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO REMAND AND MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 6, 17, 18 |

Plaintiff Patrick Bradford filed suit in San Francisco County Superior Court against his former employer, defendant Professional Technical Security Services, Inc. ("Protech"), alleging a single claim under California's Private Attorneys General Act ("PAGA") for violation of various Labor Code sections. Protech removed the case, invoking this court's federal question jurisdiction on grounds that Bradford's claim is preempted by Section 301 of the Labor Relations Management Act ("LMRA"), 29 U.S.C. § 185. It moves to dismiss on these same grounds because Bradford failed to allege compliance with the exclusive and mandatory grievance and arbitration procedures set out in his collective bargaining agreement ("CBA") prior to filing suit. Bradford opposes the motion and moves to remand.

While I find that Bradford's PAGA theory alleging violation of Labor Code section 204 is preempted by the LMRA, the remaining Labor Code violations that make up his PAGA claim are not preempted and I lack jurisdiction to keep them. Accordingly, I DENY Protech's motion to dismiss and GRANT Bradford's motion to remand, except as to Labor Code section 204.[1]

---

[1] The hearing scheduled for May 21, 2020 was vacated as unnecessary and Bradford's ex parte application for order continuing hearing to June 24, 2020 is DENIED. [Dkt. No. 18].

# BACKGROUND

## I.   FACTUAL BACKGROUND

### A.   The Complaint

Bradford was employed by Protech as a non-exempt employee with the job title of "security guard" from June 18, 2019 until September 20, 2019. Notice of Removal, Ex. A Complaint ("Compl.") [Dkt. No. 1-1] ¶ 7; Declaration of Raymond Smith In Support Of Defendant's Notice of Removal [Dkt. No. 1-2] ¶ 3. The central allegation of his Complaint is that he and other similarly aggrieved employees were consistently denied meal and rest breaks in violation of Labor Code sections 512(a) and 226.7. Compl. ¶¶ 10-11. He also brings related claims based on Protech's failure to compensate for on-the-clock work during meal and rest breaks:

- Failure to pay for all hours worked (Compl. ¶ 12);
- Failure to pay overtime (Compl. ¶ 13);
- Failure to provide accurate wage statements (Compl. ¶ 14);
- Failure to keep accurate payroll records (Compl. ¶ 15);
- Violations of Labor Code sections 1198 and 1199 based on same allegations for minimum wages and/or overtime (Compl. ¶ 16);
- Failure to timely pay wages (Compl. ¶ 17);
- Failure to timely pay all wages upon separation (Compl. ¶ 18).

Altogether, the Complaint includes a single PAGA claim premised on the alleged violations of Labor Code sections 201-202, 204, 216, 221-223, 226, 226.7, 226.8, 245-248.5, 510, 511, 512, 558, 558.1, 1174, 1194, 1197, 1198, 1199.

### B.   The Applicable Collective Bargaining Agreement

During his employment, Bradford was a member of the Service Employees International Union, United Services Workers West ("Union") and worked for Protech pursuant to a CBA agreed to by the Union, Protech, and several other security guard companies that provide union services in the San Francisco Bay Area. Defendant Professional Technical Security Services, Inc.'s Request for Judicial Notice In Support of Motion to Dismiss [Dkt. No. 6-2], Ex. 1

(hereinafter "CBA").[2] The CBA has been applied to all members of the Union since August 5, 2017 and remains in effect through June 30, 2021. *Id.*

The CBA sets forth, among other things, the terms and conditions of employment, hours of work, regular and overtime compensation rates, meal periods, rest breaks, and mandatory grievance and arbitration procedures for all claims and disputes related to these issues. Pursuant to the CBA, Union members were paid union-negotiated wages and provided union-negotiated overtime compensation breaks, union representation and other benefits. In return, Union members were required to raise any issue related to the terms and conditions of their employment and pursue those claims through the Union, in accordance with the obligatory grievance and arbitration provisions of the CBA.

The CBA provides that "[t]he Union and Employer intend that the grievance and arbitration provisions in the [CBA] shall be the exclusive method of resolving all disputes between Employer and Union and the employees covered by this Agreement unless otherwise set forth or required under applicable law." CBA at Article 25.9. The grievance and arbitration provisions expressly apply to "Wage and Hour Claims or Disputes," including:

> All state and federal statutory claims for alleged unpaid wages, claims relating to uniform maintenance, training time, rest periods, meal periods, recovery periods, overtime pay, vacation pay, expense reimbursement, penalties (including claims brought under Labor Code sections 2698- 2699.5 (PAGA)), and all other wage and hour related matters, expressly including claims arising under the Fair Labor Standards Act, California Labor Code Sections 201, 203, 204, 226, 226.7, 227.2, 510-512, 551-558, and 1194, and/or Employer obligations under any applicable California Wage Orders that could have been brought in state or federal court.

*Id.*

The grievance and arbitration procedures implement a four-step process. *See* CBA at

---

[2] I GRANT Protech's request for judicial notice of the CBA. Bradford objected on grounds that the CBA is not specifically alleged within the four corners of the Complaint and is not a matter of public record. *See* Plaintiff Patrick Bradford's Objections to Defendant's Request for Judicial Notice in Support of Motion to Dismiss [Dkt. No. 15]. However, consideration of a CBA is appropriate to determine preemption on a motion to dismiss without converting it to a motion for summary judgment. *See Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1192-93 (C.D. Cal. 2015) (granting judicial notice of CBAs to determine preemption); *McGhee v. Tesoro Ref. & Mktg. Co. LLC*, No. 18-CV-05999-JSW, 2020 WL 1310528, at *2 (N.D. Cal. Feb. 21, 2020) (same).

1  Article 25.2. If parties are unable to informally resolve a Wage and Hour Claim or Dispute
2  through these steps, the Union may elect to pursue that claim in arbitration on behalf of either an
3  individual employee or all employees allegedly affected by the policy or decision giving rise to the
4  grievance. *Id.* at Article 25.10(b).

## II. PROCEDURAL BACKGROUND

Bradford filed his Complaint in the California Superior Court of San Francisco; it was removed to this court on April 2, 2020 on the basis that his claims are preempted by federal law under the LMRA. *See* Notice of Removal [Dkt. No. 1] ¶ 10. On April 9, 2020, Protech moved to dismiss the Complaint. *See* Defendant Professional Technical Security Services, Inc.'s Memorandum of Points and Authorities in Support of Motion to Dismiss ("MTD") [Dkt. No. 6-1].[3] Bradford filed an opposition followed by a "corrected" opposition two days later. *See* Corrected Plaintiff Patrick Bradford's Memorandum of Points and Authorities in Opposition to Professional Technical Security Services, Inc.'s Motion to Dismiss ("Oppo.") [Dkt. No. 14].[4] On May 13, 2020, Bradford moved to remand, reiterating arguments made in his opposition to motion to dismiss. *See* Plaintiff Patrick Bradford's Notice of Motion and Motion for Order Remanding Case Back to State Court ("MTR") [Dkt. No. 17].

## LEGAL STANDARD

## I. MOTION TO REMAND

A defendant may remove a case from state to federal court by filing a notice of removal that lays out the grounds for removal. 28 U.S.C. § 1441(a). The district court must remand the case to state court if it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The burden of

---

[3] Sergio Reyes is also named as a defendant in his individual capacity. Protech contends that he has not been served yet or made an appearance in this case but that its argument in support of its motion extend to allegations against Reyes. MTD 5 n.1. Bradford does not address this point.

[4] Protech argues that I should disregard Bradford's untimely amended opposition because it includes substantive arguments that were not included in the originally-filed opposition and Bradford did not seek court approval for the late filing. *See* Defendant Professional Technical Security Services, Inc.'s Reply Brief in Support of Motion to Dismiss ("Reply") [Dkt. No. 16] 5-6 & Ex. A (redline comparison between originally-filed opposition and corrected opposition). His corrected opposition does not include substantial substantive changes or arguments. Objection overruled.

establishing federal jurisdiction lies with the party asserting it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*

## II. MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed

amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I. PREEMPTION UNDER THE LABOR MANAGEMENT RELATIONS ACT

Section 301(a) of the LMRA gives federal courts exclusive jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). It provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

*Id.* By enacting this statute, Congress charged federal courts with a "mandate . . . to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985); *see also Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962) (explaining that "in enacting [section] 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules"); *Textile Workers Union v. Lincoln Mills of Ala.*, 353 U.S. 448, 456 (1957) (concluding that "the substantive law to apply in suits under [section] 301(a) is federal law, which the courts must fashion from the policy of our national labor laws"). As a result of this broad federal mandate, the Supreme Court has explained, the "preemptive force of [section] 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) (internal quotation marks omitted).

The Ninth Circuit has articulated a two-part test to determine whether a cause of action is preempted by the LMRA. *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). The court must first consider "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Id.* If the right exists solely as a result of a CBA, the claim is preempted and the court's analysis ends. *Id.* If, however, the right exists independently of a CBA, the court must consider "whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (quoting *Caterpillar, Inc. v.*

6

*Williams*, 482 U.S. 386, 394 (1987)). If such analysis is required, the claim is preempted. *Id.* at 1059-60. This is true even where plaintiffs have not alleged a breach of contract in their complaint, if their claim is either grounded in the provisions of the labor contract or requires interpretation of it. *Id.* at 1060. If no such analysis of a CBA is required, the claim may proceed under state law. *Id.*

### A. Legal Character of the Claim

To determine whether a particular right inheres in state law or, instead, is grounded in a CBA, the court has to consider "the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement [and] not whether a grievance arising from 'precisely the same set of facts' could be pursued." *Burnside*, 491 F.3d at 1060. Section 301 preempts the claim if it is "founded directly on rights created by collective bargaining agreements." *Sarmiento v. Sealy, Inc.*, No. 18-CV-01990-JST, 2019 WL 3059932, at *3 (N.D. Cal. July 12, 2019) (citing *Caterpillar*, 482 U.S. at 394).

#### 1. Section 204 – Failure to Timely Pay Wages

Labor Code Section 204 provides statutory requirements for the timely payment of wages, and a violation of it can support a penalty under PAGA. *See* Compl. ¶ 17. The statutory default under section 204(a) is that all wages be paid at least twice a month. Cal. Lab. Code § 204(a). However, section 204(c) makes clear that employers need not comply with section 204's default statutory requirements when a CBA creates a different pay arrangement. *See* Cal. Labor Code § 204(c) ("However, when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees.").

Protech points out that the CBA here provides for pay arrangements that differ from the statutory default: "[E]mployees shall be paid not later than seven (7) days following completion of each pay period. All payments issued to employees must specifically state by date the period covered by such payments." CBA at Article 21.1. Article 21.3 further provides: "The Employer will cause a separate payment to be made on any verified pay discrepancy exceeding $25, after the employee notifies the Employer's accounting department by completing and submitting the Employer's Payroll discrepancy form. The payment shall be made available by no later than three

1  (3) days, excluding Saturdays, Sundays and holidays, but if not, the Union or the employee may

2  bring the matter to the attention of the responsible manager by submitting such in writing to him

3  or her." *Id.* at Article 21.3.

4  When a governing CBA provides for pay arrangements that differ from the statutory

5  default and meets the requirements of a statutory exemption, that particular labor right "exists

6  solely as result of the CBA." *See Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1155 (9th Cir. 2019)

7  (applicable CBA met statutory exemption requirements for section 514 and therefore plaintiff's

8  claim for overtime pay was controlled by his CBA and failed step one of the preemption analysis);

9  *Marquez v. Toll Glob. Forwarding*, No. 18-56060, 2020 WL 2188730, at *2 (9th Cir. May 6,

10  2020) (governing CBA met section 512(e)'s exemption requirements and thus plaintiff's "right to

11  meal periods 'exist[ed] solely as a result of the [CBAs]'") (quoting *Curtis*, 913 F.3d at 1155).

12  Because the CBA here meets the statutory exemption requirements provided in section 204(c),

13  Bradford's PAGA claim for violation of section 204 is preempted under the first step of the

14  *Burnside* test. *See Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1203 (C.D. Cal.

15  2015) (section 204 claims existed solely as a result of the CBA); *Landy v. Pettigrew Crewing,*

16  *Inc.*, Case No. 19CV07474RGKAFM, 2019 WL 6245525, at *4 (C.D. Cal. Nov. 22, 2019)

17  (section 204 claims were preempted at step one and therefore federal question jurisdiction was

18  appropriate); *see also id.* ("[Section] 204(c) operates similarly to the statute discussed in *Curtis*:

19  where a CBA provides for a different pay arrangement from that which exists under state law, a

20  covered employee's right to timely payment 'exists solely as a result of the CBA.'") (quoting

21  *Curtis*, 913 F.3d at 1154).

22  Bradford's opposition fails to address Protech's argument regarding his section 204 claim.

23  Because the CBA here provides for a different pay arrangement than the statute, Bradford's right

24  to timely payment exists solely as a result for the CBA and is preempted. Protech's motion to

25  dismiss to this portion of Bradford's PAGA claim is GRANTED for failure to exhaust mandatory

26  grievance procedures set forth in the CBA.[5]

---

[5] Because Bradford's section 204 claim is preempted "at step one of the preemption analysis," I need not address the second step for this particular claim. *Curtis*, 913 F.3d at 1155.

### 2. Other Labor Code Violations

The rest of Protech's motion focusses on step two of the *Burnside* test, implicitly conceding that the remaining PAGA theories involve a right conferred upon an employee by virtue of state law, not by the CBA. Protech glibly states that "[e]ach underlying violation that implicates a provision of the CBA requires a similar analysis" as its analysis for section 204, MTD 17, but fails to cite any legal authority that allows an entire PAGA claim to be dismissed on preemption grounds as long as some but not all of the underlying Labor Code violations are preempted.

### B. Whether the Claim Requires Interpretation of the CBA

To determine whether a state law right is "substantially dependent" on the terms of a CBA, the court must decide "whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA." *Burnside*, 491 F.3d at 1060 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994)). "Although the look to/interpret distinction is not always clear or amenable to a bright-line test, some assessments are easier to make than others." *Id.* (internal quotation marks and citations omitted).

For example, neither "look[ing] to the CBA merely to discern that none of its terms is reasonably in dispute . . ., nor the simple need to refer to bargained-for wage rates in computing [a] penalty . . . is enough to warrant preemption." *Burnside*, 491 F.3d at 1060 (internal quotation marks and citations omitted); *Livadas*, 512 U.S. at 124 ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.").

Similarly, "alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim." *Burnside*, 491 F.3d at 1060 (quoting *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001)). Indeed, the Ninth Circuit has stressed that "in the context of [section] 301 complete preemption, the term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" *Balcorta v. Twentieth Century-Fox*

*Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000). Moreover, "the totality of the policies underlying [section] 301—promoting the arbitration of labor contract disputes, securing the uniform interpretation of labor contracts, and protecting the states' authority to enact minimum labor standards—guides our understanding of what constitutes 'interpretation.'" *Id.* at 1108-1109.

### 1. Section 226.7– Failure to Provide Rest Breaks

Bradford alleges that he and other similarly aggrieved employees "were never relieved of their duties for purposes of taking a rest break, including but not limited to monitoring their company provided cell phones." Compl. ¶ 11. He further alleges that Protect "prohibited [employees] from leaving the work premises during their shifts" and did not provide "premium wages to compensate [employees] for workdays they did not receive all legally required and fully compliant rest periods." *Id.*

The CBA's rest break provision provides that employees are "entitled" to fifteen-minute rest breaks for every four hours of work, as opposed to the ten-minute rest breaks required by the Industrial Welfare Commission's Wage Orders, which employers must "authorize and permit." CBA at Article 13.6; Industrial Welfare Commission Wage Order 4-2001, Cal. Code Regs. 8 § 11040. The CBA also requires certain employers to continue providing longer breaks if they had done so prior to the date of the CBA. *See* CBA at Article 13.6. Protech argues that Bradford's allegation that he was denied or prevented from taking rest breaks is substantially dependent on what these terms mean, and whether "entitled" under the CBA creates different rights and obligations than "authorize and permit" under California's wage orders. MTD 15.

Bradford's response does not engage in the second step of the *Burnside* analysis.[6] Instead,

---

[6] I briefly address Bradford's other arguments here. Bradford contends that his PAGA claim is not subject to the CBA because the State of California is the real party in interest and not a party to the CBA. Oppo. 2-4. But the Ninth Circuit has held that "an individual employee, acting as an agent for the government, can agree to pursue a PAGA claim in arbitration." *Valdez v. Terminix Int'l Co. Ltd. P'ship*, 681 F. App'x 592, 594 (9th Cir. 2017); *see also Wulfe v. Valero Ref. Co.-Cal.*, 641 F. App'x 758, 760 (9th Cir. 2016) ("The district court did not err in compelling arbitration of Wulfe's [PAGA] claim."). While some California lower courts have articulated a different standard, the California Supreme Court has not addressed the issue. *Schwendeman v. Health Carousel, LLC*, No. 18-CV 07641-BLF, 2019 WL 6173163, at *7 (N.D. Cal. Nov. 20, 2019). As a result, courts in this District have concluded that employees can agree to arbitrate PAGA claims, consistent with the Ninth Circuit's rulings in *Valdez* and *Wulfe*. *Id.*

he argues that his right to be afforded rest breaks in compliance with California law is a nonnegotiable right that arises under state law and therefore would exist with or without the CBA and cannot be waived. Oppo 8. This does not help: even assuming under the first prong of the *Burnside* analysis that his rest period claim arises out of state law and not the CBA, his claim may still be preempted if it fails the second prong of the *Burnside* analysis. *See Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1081-82 (9th Cir. 2005) ("[I]t is conceivable that a State could create a remedy that, although nonnegotiable, nonetheless turned on the interpretation of a collective-bargaining agreement for its application. Such a remedy would be preempted by [section] 301.") (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 n.7 (1988)).

The analogous rest break provisions in another security guard union CBA at issue in *Atuatasi v. Securitas Sec. Servs. USA, Inc.*, No. 18-CV-2786-VAPPLAX, 2018 WL 2748259 (C.D. Cal. Jun. 6, 2018) sheds light on the analysis needed here. Members of that union were similarly provided fifteen minute breaks for each four hours worked. *Atuatasi*, 2018 WL 2748259 at *5. The court found that the provisions were unambiguous and rejected defendant's argument that there was a need to interpret the CBA to determine "when to take a break, how long a break would be, and how the break would be treated in terms of compensation." *Id.* Those were questions of law, not contract interpretation. The same is true here.

Protech's argument that the term "entitled" needs to be interpreted in order to resolve

---

Next, he cites to *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) for the contention that statutory claims like PAGA cannot be arbitrated. Oppo. 4-6. The Supreme Court in *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 263 (2009) clarified that the facts underlying *Barrentine*, and other cases in that line, "reveal the narrow scope of the legal rule"; those cases "did not involve the issue of the enforceability of an agreement to arbitrate statutory claims," but rather "involved the quite different issue [of] whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims." *Id.* at 264.

He also argues that the CBA effectively waives his state mandated minimum labor standard of rest periods, meal periods, overtime, minimum wages and waiting time penalty by requiring him file a grievance within 14 days. Oppo. 7. He claims this is evidence that the Union somehow breached its duty of fair representation and negotiated an unconscionable CBA. *Id.* at 8. This argument is outside the scope of the motions decided here. The question before me is whether Bradford's PAGA claim is preempted by the CBA. Whether the CBA's arbitration clause is unconscionable is a contract defense to the enforceability of the CBA. *See Meza v Oldcastle Bldg. Envelope Inc.*, No. BC523286, 2014 WL 12726685, at *5 (Cal. Super. Ct. Aug. 08, 2014) (noting plaintiff's unconscionability arguments were moot given LMRA preemption).

11

Bradford's rest break claim is unconvincing. A comparison with the Ninth Circuit's recent decision in *Marquez v. Toll Glob. Forwarding*, No. 18-56060, 2020 WL 2188730 (9th Cir. May 6, 2020) shows why. The CBAs there "permit[ted]" driver employees to take "any and all meal and rest periods that the Employee was entitled to by law," and further provided that "Employees may not leave a load unattended to take a meal or rest break." *Marquez v. Toll Glob. Forwarding (USA) Inc.*, No. 18CV03054ODWASX, 2018 WL 3218102, at *3 (C.D. Cal. Jun. 28, 2018), *aff'd sub nom. Marquez*, 2020 WL 2188730. It was not entirely clear what it meant to "permit" an employee to take a break. *Id.* Deciding plaintiff's claims also required interpretation of what "load" is, what it means to "leave a load," and what "unattended" means. *Id.* Therefore, plaintiff's rest break claim failed step two of the *Burnside* test because his claim was substantially dependent on analysis of the CBAs and "[would] require interpretation of several terms of the CBAs" including "the terms 'permit,' 'load,' 'unattended,' and 'leave a load.'" 2020 WL 2188730, at *2. The parties "actively dispute[d] the meaning of these terms." *Id.*

The term "entitled" does not raise a similar level of ambiguity here. Protech fails to show that there is an active dispute over the term that it would require interpretation of it as opposed to merely applying it. *See Valles*, 410 F.3d at 1076 ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be *consulted* in the course of state-law litigation plainly does not require the claim to be extinguished.") (emphasis added) (citation omitted).

Bradford's motion to remand his PAGA claim alleging violation of Labor Code section 226.7 is GRANTED and Protech's motion to dismiss is DENIED as moot.

### 2. Section 512(a) – Failure to Provide Meal Periods

Bradford alleges that he and similarly aggrieved employees typically worked eight or twelve-hour shifts but that Protech failed to give a thirty-minute meal break at the end of their fifth hour in an eight-hour shift or a second thirty-minute meal break at the end of their tenth hour in a twelve-hour shift. Compl. ¶ 10. He further alleges that Protech prohibited employees from "leaving their work sites during their shifts, including during any purported breaks." *Id.*

The CBA provides that "[u]nless the employee is relieved of all duty during a thirty (30)

minute meal period, the meal period may be considered an "on duty" meal period, and shall be counted as time worked and paid at the employee's regular wage rate." CBA at Article 13.7.  It allows "on duty" meal periods "only when the nature of the work prevents an employee from being relieved of all duty and when an on-the-job paid meal period is agreed to in a written agreement between the Employer and employee." *Id.*

These CBA provisions are similar to the CBA at issue in *Atuatasi*, 2018 WL 2748259, at *5.  That CBA also stated that security officers shall be provided a "paid, on-duty meal break" consisting of thirty (30) minutes and that the on-duty meal period should be considered "time worked". *Id.* The court found that these provisions were unambiguous and rejected defendant's argument that the CBA needed to be interpreted to determine what constitutes a meal period because that is "a question of state law, not contract interpretation." *Id.*  The same is true here.

Protech further argues that the CBA contains unique provision regarding "emergency situations," an undefined term that I would need to interpret in order to assess the meal period allegations raised in the Complaint.  MTD 15.  Under the CBA, "[w]hen an employee is working in an *emergency situation* where the period exceeds twelve (12) hours, and the employee has made an effort to notify the Employer of the situation, the Employer will make a *reasonable effort* to arrange for the employee to eat after twelve (12) hours and every six (6) consecutive hours thereafter.  If the Employer fails to provide a meal, the employee should be paid in lieu thereof fifteen dollars ($15.00) per meal in the next pay period." CBA at Article 13.5 (emphasis added).  Protech contends that I would be required to interpret the specific terminology used in the CBA by analyzing and determining what constitutes an "emergency situation" and "reasonable effort," and how this provision modifies the other meal period requirements under Article 13.7 of the CBA and the Labor Code.  MTD 15.[7]

---

[7] Bradford again does not directly respond to this argument.  Instead, he reiterates that his right to be afforded meal periods is a minimum requirement of state labor law and therefore would exist with or without the CBA and cannot be waived.  Oppo 12.  As stated above, even assuming under the first prong of the *Burnside* analysis that Bradford's meal period claim arises out of state law and not the CBA, his claim can still be preempted if it fails the second prong of the *Burnside* analysis.

13

Protech has "failed to show anything more than a 'hypothetical connection between the claim and the terms of the CBA.'" *McGhee v. Tesoro Ref. & Mktg. Co. LLC*, No. 18-CV-05999-JSW, 2020 WL 1310528, at *4 (N.D. Cal. Feb. 21, 2020) (quoting *Cramer*, 255 F.3d at 691). In *McGhee*, defendants similarly argued that the court would need to interpret a CBA provision that provides for an "off-duty meal period" in which employees were "free to leave the premises" unless "the needs of the business require otherwise." *Id.* The court held that the meal period allegations would merely require it to "look" at the relevant CBAs as evidence of [defendant's] procedures but the 'focus remain[ed] on [defendant's] actions, not the CBAs' authorizations." *Id.* "Put differently, whether [defendant] violated or complied with the CBAs has no import whether they also violated California law." *Id.* (citation omitted); *Burnside*, 491 F.3d at 1060 (finding irrelevant "whether a grievance [under a CBA] arising from 'precisely the same facts' could be pursued"); *see also Cramer*, 255 F.3d at 691-92 ("A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility.").

Similarly, the meal period allegation here would only require me to "look" at the "emergency situation" exception provided in the CBA. Protech's hypothetical connection between the term "emergency situation" and Bradford's claim is insufficient.[8]

Bradford's PAGA claim alleging violation of Labor Code section 512(a) is not preempted because it is not substantially dependent on the terms of the CBA. His motion to remand is GRANTED and Protech's motion to dismiss is DENIED as moot.

### 3.   Other Labor Code Violations

The parties do not sufficiently address the remaining Labor Code violations alleged in

---

[8] This case also differs from other cases that have found section 512 claims were preempted because the claims required interpretation of the CBAs. *See, e.g., Buck v. Cemex, Inc.*, No. 1:13-CV-00701-LJO, 2013 WL 4648579, at *6 (E.D. Cal. Aug. 29, 2013); *Raphael v. Tesoro Ref. & Mktg. Co. LLC*, No. 2:15-CV-02862-ODW EX, 2015 WL 3970293, at *7 (C.D. Cal. Jun. 30, 2015). In those cases, interpretation of disputed CBA provisions was necessary to determine if the statutory exemption in section 512(e) applied to the meal period claims. Here, Protech does not argue that any of the CBA provisions show that section 512(e)'s statutory exemption applies to the meal period claim; rather, it argues that the CBA provisions on meal periods must be generally interpreted in order to resolve the meal period claim.

Bradford's single PAGA claim. A review of the Complaint, however, reveals that the remaining allegations are derivative of Bradford's claims regarding meal periods and rest breaks:

- Failure to pay for all hours worked because Bradford and similarly aggrieved employees "were not paid for time spent on-the-clock while on their respective meal and rest breaks while being required to monitor company provided cell phones." Compl. ¶ 12;
- Failure to pay overtime by "failing to correctly calculate . . . total number of works worked by [Bradford] and similarly aggrieved employees (by virtue of [Protech's] failure to compensate for all on-the-job work [it] required aggrieved employees to perform during meal and rest breaks) and not paying proper overtime rates for all overtime worked." Compl. ¶ 13;
- Violations of Labor Code sections 1198 and 1199 arising from same alleged violations with respect to minimum and/or overtime wages. Compl. ¶ 16;
- Failure to pay all wages earned and unpaid upon discharge or resignation based on allegation that Protech "has not paid for, inter alia, uncompensated time due to [it] not paying meal and rest break premium pay." Compl. ¶ 18.

Bradford does not clearly link his allegation that Protech failed to provide accurate wage statements and keep accurate payroll records to his meal and rest breaks claim. *See* Compl. ¶¶ 14, 15. But viewing the Complaint as a whole, it appears that these two claims are also derivative.

Accordingly, Bradford's motion to remand the remainder of the Labor Code violations that make up his PAGA claim is GRANTED and Protech's motion to dismiss is DENIED as moot. These allegations are derivative of his claims for meal and rest break violations, which, as discussed above, are not preempted. *See Atuatasi*, 2018 WL 2748259, at *6 (granting motion to remand on plaintiff's claim for failure to provide accurate wage statements because it was derivative of his other claims for failure to provide meal and rest breaks and overtime compensation, which were not preempted by the LMRA).

## CONCLUSION

Bradford's PAGA claim alleging violation of Labor Code section 204 is preempted by the

LMRA and is DISMISSED because Bradford failed to exhaust the CBA's arbitration procedures. But the remainder of his PAGA claim alleging violation of Labor Code sections 226.7 and 512(a), and all other derivative claims, is not preempted.  The remaining PAGA claim is REMANDED to California Superior Court of San Francisco.

**IT IS SO ORDERED.**

Dated: May 27, 2020

William H. Orrick
United States District Judge